| | | |
|---|---|---|
| LAURA FRANKS and SANDRA JORDAN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 10 CV 00013 |
| v. | ) ) | Judge Edmond E. Chang |
| MKM OIL, Inc., | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Laura Franks and Sandra Jordan, as proposed class representatives, have filed this lawsuit against Defendant MKM Oil, Inc.[1] Plaintiffs seek damages based on violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* Plaintiffs have moved for conditional certification pursuant to § 216(b) of the FLSA, [R. 120], and for class certification of the two state law claims, [R. 164]. For the reasons explained below, the FLSA motion is denied, and the class certification motion is granted in part and denied in part.

### I.

MKM Oil is a corporation that operates between 30 and 40 retail gas stations in Illinois. R. 165 at 1-2. Each retail station employs anywhere from 5 to 20 employees at a time. R. 146 ¶ 180. Plaintiffs Laura Franks and Sandra Jordan are both former

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for the FLSA claim, and supplemental jurisdiction under 28 U.S.C. § 1367 for the Illinois claims.

employees of MKM, *id.* ¶ 45; Franks was an Assistant Manager, *id.* ¶ 54, and Jordan was a cashier operator, R. 120-8. Plaintiffs base their lawsuit on three distinct factual allegations, which we describe below.

## A. Time Conversion Error

Throughout Plaintiffs' employment, MKM tracked work hours using a computer based system named "RUBY." R. 146 ¶ 143. The RUBY system tracks increments of time by actual minutes; for example, an employee who worked for 4 hours and 30 minutes would have an entry that reads: "4:30." *Id.* ¶ 144. MKM does not, however, use the RUBY system to pay its employees. *Id.* ¶ 145. Instead, it uses the "ADP" payroll system, an acronym for the outside vendor that created the system. *Id.* MKM employees would manually enter and transfer work time between the two systems by completing a handwritten "weekly hours sheet." *Id.* at 151. The hour sheets then would be transmitted to MKM corporate headquarters, where the work hours would be manually entered by a MKM employee into the ADP Payroll system. *Id.* ¶ 152.

This conversion produced a serious problem. The ADP Payroll system tracks time differently than the RUBY system; it uses increments of time based on what Plaintiffs refer to as the "Military Time" method. *Id.* ¶ 145(b).[2] Under the Military Time method, time is tracked by hundredths of an hour. That means that an employee

---

[2]"Military time might be a misnomer because military time simply adjusts the hours so that post-Noon hours are expressed continuously up to 23; the ADP system was using a form of decimal. But this opinion will retain Plaintiffs' naming convention.

who worked for 4 hours and 30 minutes should have their time entered as 4.50. *Id.* ¶ 146.

But that did not happen. Instead, the manual conversion from the RUBY system to the ADP system led to inconsistencies. *Id.* ¶ 147. Using the above example, the RUBY entry would indicate that the employee worked 4:30 hours, but the conversion would lead to an ADP entry of 4.30 hours instead of 4.50 hours. So, in effect, the employee would lose credit for .20 hours. When Franks discovered this problem, she complained to her manager, Lara Harmon. *Id.* ¶¶ 147, 157.

Harmon claims that she reported this problem to MKM management repeatedly, but management ignored her. *Id.* ¶ 160. At the same time, Harmon seems to have lulled Franks by saying that Franks was the one calculating her hours incorrectly. *Id.* ¶ 159. Harmon admitted, however, that she did not really understand how the conversion worked, but "that was how it was done." *Id.* ¶ 162. According to Plaintiffs, the violations stemming from the conversions occurred from 2004 until 2010, R. 165 at 2, and affected 95% of all MKM employees, which amount to hundreds and thousands of individuals. R. 188 at 3.

## B. Deductions for Losses

Plaintiffs also allege a company-wide policy of pay deductions to make up for business losses suffered during the employee's shift. R. 120-1 ¶ 13. For example, Laura Franks was responsible for paying her manager $8.17 in cash when a customer filled up their gas tank but failed to pay and instead drove away (Plaintiffs refer to this phenomenon as a "Drive-Off"). *Id.* ¶ 13(a). Sandra Jordan was responsible for paying

$39.80 due to a customer theft that occurred on her watch. R. 120-8 ¶ 12(a). Both Franks and Jordan list other instances of paying for business losses. *See* R. 120-1, R. 120-8. Plaintiffs also claim that other employees were also required to pay their managers for a variety of other cash shortfalls, such as when the cash register reported a shortage. R. 120-1 ¶ 16.

MKM denies the existence of a company-wide policy where employees paid their managers for business losses. R. 181 at 16. Moreover, MKM has submitted affidavits from individual branch managers, who state a number of different methods in handling cash shortfalls. *Id.* For example, at some stores, managers claimed that they never had employees pay cash out of pocket. *E.g.*, R. 182, Exh. 7 ¶ 3. At others, they allowed the employee the choice of paying cash in lieu of receiving disciplinary measures. *E.g.*, R. 182, Exh. 25 ¶ 5. Indeed, the employee manual indicates that if there are cash shortfalls or drive-offs, employees will be subject to "discipline and corrective action" but makes no mention of punitive measures, such as having employees pay cash out of pocket. R. 189-8 at 7.

Plaintiffs have produced, however, some evidence that cash payments were a common policy. First, they have furnished a copy of a separate document titled "MKM Drive-Off Policy" that states:

> When reviewed by management, if all steps were followed, the employee will not be responsible for paying the drive-off. If any of the above steps were neglected, *you will be responsible for payment* of the drive-off and additional corrective action could/will result.

R. 120-11 at 2 (emphasis added). Second, Plaintiffs have provided at least 250 copies of signed documents titled "MKM Drive-Off Policy" that state:

> I, [name] understand the MKM Oil, Inc. drive-off policy and I understand if I neglect to do any of the steps laid out in the drive-off policy *I will be responsible for payment* of any drive-off I have while operating the register. I understand payment must be received by the next pay date following the drive-off. I also understand I can ask to be put on a payment plan in order to pay for the drive-off. However, if I miss a payment, the balance of the drive-off will be expected by the next pay date or further action will be taken.

R. 189, Exhs. 18-23 (emphasis added). Each one of these documents was signed by the employee, the manager, and each document includes the specific retail location. *Id.*

## C.  Off-the-Clock Work

Laura Franks also claims that as an Assistant Manager, she was required to work "Off-the-Clock" without pay every Friday night. R. 120, Exh. 1 ¶ 18. Off-the-Clock work was work involving calculating payroll and work hours for all employees at the retail location. *Id.* ¶ 20(d). Specifically, she needed to print register tapes, organize them, and place the tapes in a specific location for her supervisor to retrieve. *Id.* ¶ 20(l). Franks would then have to set the alarm, turn off the lights, and lock the door. *Id.* According to Franks, these tasks took 4-6 minutes, but she was prohibited from logging this time as work time. *Id.* ¶ 20.

Franks complained to Harmon, her manager, about being forced to work during these 4-6 minutes without compensation. *Id.* ¶ 20(j). Franks claims that Harmon instructed Franks to continue to perform the Off-the-Clock duties regardless of whether time was recorded. *Id.* ¶ 20(k). According to Franks, when she tried to record her time for these tasks, Harmon would go back to change Franks's time entries. *Id.*

¶ 24. Franks claims that Harmon acted this way in accordance with official MKM policy. *Id.*

MKM denies that there was a company policy that barred the recording of Off-the-Clock work, and presents a series of affidavits by managers at other branches. R. 182. According to these managers, the Off-the-Clock work varied widely depending on the particular retail location. R. 181 at 13-14. The work never required more than "a minute or two" of actual work. *Id.*

### D.

In January 2010, Plaintiffs filed this lawsuit. R. 1. The Sixth Amended Complaint, filed in June 2011, includes 3 claims at issue in the pending motions: (1) violations of the Illinois Minimum Wage Law; (2) violations of the Illinois Wage Payment and Collection Act; and (3) an FLSA collective action claim.[3] R. 146 ¶¶ 251-308. Plaintiffs have now moved for class certification, R. 164, for the IMWL and IWPCA claims, and for this Court to conditionally certify a FLSA collective action, R. 120. The two motions are now fully briefed before this Court.

### II.

### A.

Courts usually should decide the question of class certification before turning to the merits of a given action. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786-87 (7th Cir. 2008). To be entitled to class certification, a plaintiff must satisfy each

---

[3]The Sixth Amended Complaint also alleges two common-law claims, one for quantum meruit, and the other for unjust enrichment.

requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one subsection of Rule 23(b). *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). "Failure to meet any of the Rule's requirements precludes class certification." *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

"A class may be certified only if 'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir.2011) (emphasis added by *Creative Montessori* ) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Dukes*, 131 S. Ct. at 2551 (class certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). The Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 619 (7th Cir. 2001).

**B.**

Plaintiffs' class action claims are based on alleged violations of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* R. 164 at 2. Plaintiffs have defined the proposed classes as follows:

> All persons employed by Defendant MKM Oil at any of its 32-33 locations from January 4, 2007, to the conclusion of this action who worked and were paid less than the then-applicable Illinois minimum wage rate ($6.50 per hour between January 1,2005, and June 30, 2007; $7.50 per hour between July 1,2007 and June 30, 2010, $8.25 after August 1, 2010).

> All persons employed by Defendant MKM Oil at any of its 32-33 locations from January 4, 2007, to the conclusion of this action who worked and were paid less than the then-applicable Illinois minimum wage rate were paid an hourly rate less than the then-applicable Illinois minimum wage rate ($6.50 per hour between January 1, 2005, and June 30, 2007; $7.50 per hour after July 1,2007) and who worked more than forty (40) hours in any individual workweek, but did not receive overtime pay at the rate of one and one-half times their lawful regular rate of pay for all time in excess of forty (40) hours.

> All persons employed on an hourly basis by MKM at any of its 32-33 Illinois locations from January 4, 2005, to the conclusion of this action who were not paid for all time worked.

*Id.* at 2-3. MKM objects to the language of the class definitions, arguing that they "presuppose defendants' liability" by including phrases such as "were paid less than minimum wage"; "did not receive overtime pay"; and "were not paid for all time worked." R. 181 at 7-8. Relying on terms that assume liability in class definitions is indeed a problem, because it "makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the employer should prevail on the merits, this would deprive the judgment of preclusive effect . . . ." *Bolden v. Walsh Constr. Co.*, – F.3d –, 2012 WL 3194593, at *2 (7th Cir. 2012). But if the definitions

could be altered by simply revising the language to fix the issue, the problem is surmountable. *Id.* Here, the definition could be changed to include factual details, as opposed to abstract legal conclusions. For example, "paid less than minimum wage" could be changed to "employees whose hourly rate fell below the minimum wage due to the time conversions." Therefore, the problems MKM identify are reparable, and the Court will now move on to examine each individual factual claim and analyze whether they meet the class requirements under Rule 23.

### 1.

Plaintiffs' first claim is based the allegation that MKM deprived employees of their pay due to data conversion from RUBY to ADP. R. 165 at 2. The failure to compensate employees for the additional incremental time, according to Plaintiffs, violated both the IMWL and the IWPCA.[4] The Court will address each claim in turn.

### a.     Illinois Wage Payment and Collection Act

"The purpose of the [IWPCA] is to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation without retaliation from employers." *Miller v. Kiefer Specialty Flooring, Inc.*, 739 N.E.2d 982, 987 (Ill. App. Ct. 2000). Laura Franks has presented evidence that MKM failed to pay her for all of the hours she worked. *E.g.,* R. 165-2 at 2-3. Her affidavit, supported by detailed pay records, show that when MKM converted time worked—specifically, the minutes worked beyond a whole number of hours—from the RUBY system to the ADP

---

[4]It is unclear whether Plaintiffs are alleging violations of the IMWL based on the conversion. *See* R. 164 at 2-3. For the sake of thoroughness, the Court will assume they are.

system, it reduced her pay. R. 120, Exh. 1. With regard to this claim, the Court finds that there is sufficient evidence in the record to certify the class.

First, the class is easily ascertainable. Plaintiffs can look at all the ADP pay records and note which time entries have minutes expressed as a decimal. The names of the employees who are connected with each individual time entry will constitute the class. This group of employees is readily identifiable as a class, *Oshana*, 472 F.3d at 513, and thus, the class is sufficiently definite.

Second, the class meets the numerosity requirement. Even a quick glance at the time-sheet entries shows that nearly all entries include portions of an hour. *E.g.*, R. 165, Exh. 11 at 3. Moreover, MKM employs several hundred individuals at any given time, and there is sufficient evidence in the record that the vast majority of employees—according to Plaintiffs' evidence, approximately 95%, R. 188 at 3—recorded their hours via RUBY and were paid via ADP.

Third, the class meets the commonality requirement. Class action litigation would address the common question facing the class: did MKM fail to pay employees all the wages that they earned due to the time conversion? The answer, whether it is yes or no, will determine MKM's liability regarding numerous employees. "[D]etermination of its truth or falsity will resolve an issue that is central to each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Fourth, Plaintiffs' own claims are typical of this proposed class. As noted earlier, 95% of the hundreds of employees logged their time with RUBY and were paid with

ADP. MKM has presented no evidence that suggests that different retail locations used different time systems.

Fifth, common issues would predominate over individual issues. To certify a class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). Although the specific amount of damages would require individual calculations, the common question of whether the conversion violated the employees' Illinois Wage Payment and Collection Act rights predominates. The individual issue—calculation of damages—would be simple. All that would be necessary is to take the decimal portion of an ADP time entries, convert them back to actual minutes rather than hundredths of an hour, and determine the difference between actual minutes and hundredths of an hour. The predominate common factual question is whether the time conversion error resulted in recording fewer minutes worked and the predominate common legal question is whether, if there was an under-recording of time worked, MKM is liable for underpayment of wages.

### b.      Illinois Minimum Wage Law

Plaintiffs' second claim, under the Illinois Minimum Wage Law, does not meet Rule 23 standards for certification. The IMWL requires employers to pay their employees a minimum wage for all work performed in a workweek. 820 ILCS 105/4(a). Although Plaintiffs do have, for the same reasons as the IWPCA claim, enough evidence for an ascertainable class and to show typicality, they have not presented

sufficient evidence of numerosity and predominance. Specifically, they have provided insufficient evidence regarding how many employees were paid the minimum wage.

Identifying employees who were paid minimum wage is necessary because that is the only way to determine whether IMWL violations have occurred. If an employee was paid the minimum wage, then deductions resulting from the conversion could necessarily constitute a violation, because being paid less than the time worked would necessarily drag the employees' pay below the minimum wage. But, as MKM convincingly argues, R. 181 at 18-19, if an employee was paid an hourly rate greater than the minimum wage, the Court would have to determine the effective pay rate by taking the actual hourly pay rate (that includes the deduction) and compare it to the minimum wage. The same issue arises with regard to determining whether employees were properly compensated for their overtime work because the Court would have to identify those employees who worked more than 40 hours a week.

Plaintiffs have presented records that ostensibly show that five different employees were paid, in 2010, $8.25 per hour—the Illinois minimum wage.[5] R. 120-26-30. These records are insufficient, however, for two reasons. First, the records do not identify which retail location these employees worked. *Id*. Thus, it is difficult to

[5]The federal minimum wage for that time period was $7.25. 29 U.S.C. § 206. The state minimum wage (for employees who have worked for more than 90 days) for the first half of 2010 was $8.00, and the second half was $8.25 (if the employee had worked for more than 90 days). 820 ILCS 105/4. If the employee had worked for a time period less than that, the state minimum wage would be $7.50 and $7.75, respectively. *Id*. Plaintiffs did not submit records regarding the length of employment for each employee, and thus, it is not entirely clear that employees who were paid $8.25 per hour were minimum wage employees.

generalize how widespread the alleged minimum-wage law violations were because they might have, for all the record shows, all occurred at one retail location. *Id.*

Second, it is not entirely clear whether all these employees were being paid at the minimum wage. For example, it does appear that Diana Davis was paid $8.25 per hour. R. 120-26 at 2. However, the other employees were paid at a blended rate: April Gaines was paid an hourly rate of $8.00 for regular shifts, $12.00 for holiday shifts, and $9.25 for the midnight shift, R. 120-27. Melisa Alvarado was paid an hourly rate of $9.25 for the midnight shift and $13.87 for holiday shifts. R. 120-28. Nicholas Oleynichak was paid an hourly rate of $9.25 for the holiday shift. R. 128-29. And Antoinette Cigancik was paid an hourly rate of $9.00. R. 120-30.

The uncertainty regarding whether these employees were paid the minimum wage and the lack of evidence regarding the overall number of employees paid the minimum wage means that the proposed class has not satisfied the numerosity requirement. *E.g., McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Courts have also found the numerosity requirement satisfied where the putative class would number less than forty individuals.") Nor can the proposed class meet the predominance requirement, because the Court would have to conduct an analysis of each individual employee, how long they worked for MKM, and make individual calculations to determine whether they failed to receive the minimum wage or overtime pay. These individual issues would predominate over any common issues, and thus, the class does not meet the predominance requirement.

**2.**

Plaintiffs' second claim is based on the fact that employees' pay was deducted for ordinary business expenses such as cash register shortfalls or when customers would drive off without paying. R. 165 at 2-3. According to Plaintiffs, these deductions led to violations of the IWPCA (because employees were not fully compensated for their work) and the IMWL (because the deductions caused the employees to be paid less than minimum wage or less than the state-mandated overtime rate). R. 146 ¶¶ 254, 265. The class cannot be certified, however, because it is not sufficiently definite to satisfy ascertainability.

Beyond being required for evaluation of the Rule 23(a) prerequisites, the ascertainability requirement serves two important purposes. First, it alerts the parties and the Court to the burdens that identification of the class might entail, which is relevant to whether the proposed class action is manageable. *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981). "In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket." *Id*. Second, ascertaining a definite class ensures that parties actually harmed by the defendants' conduct will be the recipients of the relief eventually awarded. *Id*.

Here, the proposed class is not ascertainable. The term "pay deductions" is a misnomer; as it turns out, employee pay was not reduced by MKM in the form of deductions from the employee's paycheck. R. 120, Exh. 1 ¶ 13. Instead, employees made cash payments to the managers. *Id*. That means that to identify class members, the Court must determine which employees made these cash payments. And although

14

Franks did keep some receipts and records of cash payments she made for drive-offs, *e.g.*, R. 120, Exh. 3 at 1, there is no evidence that MKM printed these receipts as a matter of policy.

And even if it was company policy to print drive-off receipts whenever employees paid managers cash, the receipts themselves do not clearly identify which employees were being penalized.[6] *E.g.*, R. 120, Exh. 23 at 20. These facts indicate that even if it was possible, identifying the class would be tremendously burdensome. Therefore, the Court finds that this proposed class is not ascertainable. For the sake of completeness, however, the Court will address the parties' other arguments.

MKM argues that the class cannot meet commonality because the managers at each retail location had unfettered discretion to enforce violations of the drive-off policy as they saw fit. R. 181 at 16-17. MKM bases this argument on a host of declarations from store managers from different retail locations. *Id.* Plaintiffs object to these declarations because these witnesses were not disclosed under Rule 26(a)(1). R. 133 at 2, R. 133, Exh. 1. The Court agrees with Plaintiffs; MKM may not properly rely on the testimony of these witnesses for failing to disclose them when required. But even if the testimony of these managers could be properly admitted, Plaintiffs still have enough evidence of commonality. The 250 signed copies of the MKM drive-off policy from many different retail locations, R. 189, Exhs. 18-23, is sufficient circumstantial evidence to

---

[6]The payment receipts did not always state "Drive Off;" sometimes, they stated "Pay In."

show that there may have been a uniform policy across all MKM locations for employees to pay for drive-offs.[7]  R. 188 at 11.

But the proposed class cannot meet predominance, because individual issues would predominate over common ones. MKM did not enforce the drive-off policy through direct payroll deductions. R.120, Exh. 1 ¶ 13. Instead, each employee paid cash to their manager directly. *Id*. So even if there was a common, uniform policy across all retail locations to have employees pay for drive-offs, determining which employees were affected would require a highly individualized analysis. A huge number of MKM employees would have to be questioned, and receipts would have to be matched to employment records. Moreover, as discussed above, it is not clear that receipts were always printed when employees paid for drive-offs. Therefore, resolving this claim would require an extraordinarily individualized analysis that would predominate over any common issues.

Finally, Plaintiffs fail to show numerosity because they have not presented sufficient evidence that a large number of employees actually made payments. They only have proof that 5 (Franks, Jordan, Diana Davis, R. 120-26, April Gaines, R. 120-27, and Billie Max, R.165-23) employees made payments for drive-offs.[8] A former

---

[7]Plaintiffs' other argument is that even if there was discretion in enforcement, "if a payment was made, a payment was made: it is that simple." R. 188 at 9. The Court finds this unconvincing because substantial variation in enforcement due to the discretion of local managers can preclude a finding of commonality. *See Dukes*, 131 S. Ct. at 2552-57.

[8]Plaintiffs have submitted "Corrective Action Drive-Off" forms from 5 employees, R. 120, Exhs. 18-22, that ostensibly show that cash payments were made. But the forms are not all identical. For example, some of them indicate that the employee will make payments in the future. *E.g.*, R. 120-17 at 1. Others make no mention of cash payments, and instead only

Mazon retail location manager named Billie Max stated that employees made payments 10-12 times during each 6 month period, but she did not mention how many employees made those payments (it could be that a few employees made all or most of the payments). R. 165-23 ¶ 12. Although there is no minimum number of cases required for numerosity, courts have viewed 40 as a rough minimum, *McCabe*, 210 F.R.D at 643, and even after extensive discovery, Plaintiffs have not shown that this proposed class approaches that number.

**3.**

Plaintiffs' third claim is based on Franks's allegation that she was forced to work Off-the-Clock without being compensated for her time. R. 120, Exh. 1 ¶ 18. That, according to Franks, led to violations of the IWPCA and the IMWL. R. 146 ¶¶ 256, 269. Unfortunately, Franks has not provided sufficient evidence to meet the commonality requirement.

There is insufficient evidence that the Off-the-Clock policy was widespread and prevalent. MKM argues that Off-the-Clock practice varied widely and is not suitable for class treatment. R. 181 at 14. According to MKM, some retail locations had employees spend a few seconds on Off-the-Clock duties (pressing a button, and then leaving the store), and others required one or two minutes. *Id.* However, as discussed earlier, these arguments are based on testimony submitted by undisclosed witnesses. *See supra* at 15. Thus, the Court cannot rely on their testimony.

---

reference "further corrective action." *E.g.*, R. 120-28 at 1.

But even without the testimony of the managers, Plaintiffs have not met their burden to prove commonality. The Mazon store manager, Lara Harmon, did state that all branches force their employees to engage in Off-the-Clock work. R. 120-16, Harmon Dep. at 16. But Harmon did not indicate, in her deposition or anywhere else, how she has personal knowledge of the Off-the-Clock activities at locations other than the two locations (Mazon and Morris) where she worked. *Id.* Nor do the other witnesses' testimony establish a widespread practice; Franks and Billie Max both worked at the Mazon location as well. R. 120, Exh. 1, R. 165-23 ¶ 12. Thus, because establishing commonality rests on one witness who only worked at two MKM locations, Plaintiffs have failed to satisfy commonality.

**4.**

Rule 23 also requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011). Based on this Court's review of the record, Plaintiffs' counsel is adequate, but Sandra Jordan is not an adequate class representative.

There are two reasons why Jordan fails to meet adequacy. First, as MKM points out, Jordan did declare bankruptcy without listing her claims against MKM as an asset. R. 181 at 22, Jordan Dep. at 66-69. That failure affects her credibility, which has

an adverse effect on her ability to adequately represent the class. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems . . . may not be an adequate class representative."). Second, "[w]hen a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate," which includes "all the debtor's interests, legal and equitable." *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). That means Jordan cannot be the class representative because she does not own the claim. *Id.* Thus, the Court finds that Jordan is not an adequate representative of the class.

With regard to adequacy of counsel, the Court believes that the extensive effort Plaintiffs' counsel has poured into this litigation and the filings is sufficient to demonstrate counsel's adequacy to represent a class. But that conclusion was not clear-cut because counsel made several meritless arguments in the briefs. For example, he claims that for class certification, "adequacy of counsel is premature." R. 188 at 4. This is plainly incorrect, as adequacy of counsel is directly relevant to the class certification question. *Spano*, 633 F.3d at 586-87; *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002); *Retired Chicago Police Assn.*, 7 F.3d at 598. Counsel also misunderstood *Dukes* to apply only to Title VII claims, R. 188 at 6, when it actually interpreted Rule 23(a)'s commonality requirement—which applies to all class certification motions. *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 902 (7th Cir. 2012). Although these errors do not rise to the level of a finding of inadequacy of counsel, the

Court could take them into account if the class prevails and counsel moves for attorney fees.

## III.

Plaintiffs have also filed a motion for conditional certification of the proposed FLSA collective action. R. 120. Section 16(b) of the FLSA permits plaintiffs, who are similarly situated, to bring a collective action against an employer for unpaid minimum wages or overtime compensation. 29 U.S.C. § 216(b). A collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent. *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). Although the Seventh Circuit has not decided this issue, "the majority of courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp.2d 845 (N.D. Ill. 2008).

At the first step, "a named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F. Supp.2d 1042, 1045 (N.D. Ill. 2003) (internal quotation omitted). At the second step, after the parties have engaged in a substantial amount of discovery, the "court's inquiry is more stringent." *Jirak,* 566 F. Supp.2d at 848. Here, Plaintiffs and MKM disagree whether the current litigation is in the first or the second step. *Compare* R. 130 at 13 *with* R. 133 at 11. The parties

have engaged in class certification and collective action discovery for ten months: from September 2010, R. 66, to July 2011, R. 143. The Court has repeatedly referred to the need to bring the discovery to a close, and given the overlap between the class certification question and the collective-action certification question, it makes no sense to treat this as the conditional certification stage.

At the second stage, the Court must consider: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp.2d 759, 762 (N.D. Ill. 2004). The parties dispute whether there is sufficient evidence that there is a uniform policy, and whether Plaintiffs are similarly situated to other MKM employees. The Court notes that the only claims that are being considered are those alleging violations of minimum wage or overtime pay.[9]

For the reasons explained in the section discussing the class certification, Plaintiffs have not met their burden in persuading this Court that a collective action should be certified. With regard to the Off-The-Clock claims, there is not enough

_____

[9]That is because "gap time"—"time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked," *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999), is not covered by the FLSA. *E.g., Brown v. Lululemon Athletica, Inc.*, No. 10-CV-5672, 2011 WL 741254, at *4 (N.D. Ill. 2011); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00-CV-5755, 2004 WL 1882449, at *5 (N.D. Ill. 2004); *O'Brien v. Encotech Const.*, No. 00-CV-1133, 2004 WL 609798, at *6 (N.D. Ill. 2004); *Sherman v. Premium Concrete Cutting, Inc.*, No. 01-CV-7263, 2004 WL 1510030, at *2-3 (N.D. Ill. July 6, 2004); *Cuevas v. Monroe St. City Club, Inc.*, 752 F.Supp. 1405, 1416-17 (N.D. Ill. 1990).

evidence of a uniform policy that forced employees to engage in such work. With regard to the pay deductions, there is insufficient evidence of a large number of similarly situated employees because it is unclear whether the policy of forcing employees to pay cash to their managers was uniform across all branches. Moreover, to determine the specific amount paid, the Court would have to conduct a highly individualized analysis, employee-by-employee.[10] With regard to the time conversion claims, although it appears that though the conversion may have reduced many employees' pay rate, it is unclear whether the reduced rate fell below the minimum wage or the minimum overtime rate. Based on the pay statements in the record, many employees were paid greater than the minimum wage. As such, Plaintiffs have not met their burden to show that a collective action should be certified.[11]

## IV.

For the reasons described above, the Court grants in part Plaintiffs' motion for class certification, R. 164, specifically on the time conversion claim for violations of the Illinois Wage Payment and Collection Act only. The Court denies the motion as to the remaining claims, and also denies Plaintiffs' motion [R. 120] for conditional certification under the FLSA.

---

[10]And, as discussed above, because some of the proposed opt in plaintiffs may have been paid more than the minimum wage they are not similarly situated to the representative plaintiffs here. *Supra.*

[11]Although this Court denies the FLSA collective action, the individual claims of other potential plaintiffs remain unaffected because "when a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs." *Espenscheid v. DirectSat USA, LLC*, – F.3d –, 2012 WL 3156326, at *4 (7th Cir. 2012) (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010)).

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 7, 2012