# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAURA FRANKS, ET AL.,

      Plaintiffs,

      v.

MKM OIL, INC.,

      Defendant.

No. 10 CV 00013

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion for attorneys' fees and costs [319]. Plaintiffs seek an award of attorneys' fees in the amount of $430,640.00 for 1,230.4 hours at a rate of $350.00 per hour. Plaintiffs also seek an award of costs in the amount of $3,070.15. For the reasons discussed herein, the motion is granted in part and denied in part. The Court awards attorneys' fees in the amount of $336,552.00, plus costs, in the amount of $3,070.15.

## I. BACKGROUND

On January 4, 2010, Plaintiffs Laura Franks and Sandra Jordan filed a lawsuit against Defendant MKM Oil, Inc. Plaintiffs sought damages based on violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* (Dkt. 8). The claims were brought on behalf of assistant store managers and clerks who worked at retail gasoline/convenience stores.

On April 22, 2010, Plaintiffs filed a motion to certify a collective action. (Dkt. 26). On April 19, 2011, Plaintiffs filed a renewed motion to certify a collective action. (Dkt. 120). On June 8, 2011, Plaintiffs filed a Sixth Amended Complaint, which for the first time contained a conversion claim alleging that Plaintiffs were underpaid based on the method by which MKM calculated wages (the "RUBY" system). (Dkt. 146). In response, Defendant filed an Amended Answer containing twenty-one (21) affirmative defenses. Plaintiffs filed a first motion to strike MKM's affirmative defenses (Dkt. 157) and a second motion to strike/dismiss MKM's defenses. (Dkt. 159). On March 31, 2012, the Court denied Plaintiffs' motion to strike defenses (Dkt. 206), and on September 7, 2012, the Court denied, without prejudice, Plaintiffs' motion to strike affirmative defenses. (Dkt. 221).

On August 24, 2011, Plaintiffs filed a motion for class certification and a supplemental memorandum to its renewed motion for collective action. (Dkt. 164-66). Plaintiffs sought to certify a class for: (1) time conversion error (the "RUBY" claim); (2) compelled payments, deductions for losses sustained during an employee's shifts, such as "drive-offs"; and (3) off-the-clock work. On September 7, 2012, the Court denied Plaintiffs' motion for a class action for the off-the-clock work and compelled payment claims and denied the motion for conditional certification pursuant to § 216(b) of the FLSA. The Court granted certification of the IWPCA class as to the RUBY claims. (Dkt. 220).

In 2013, Plaintiffs Renee Kalmes and Daniel Sparks filed an FLSA and IWPCA action against MKM on behalf of store managers for overtime compensation and

compelled payments, and an individual claim by Kalmes for retaliatory discharge. *Kalmes, et al. v. MKM Oil, Inc.*, No. 13 C 363 (filed Jan. 17, 2013). Mr. Ireland represented the plaintiffs. The district court preliminarily certified the case as a collective action, and the parties served notice on approximately 40 individuals. (Dkt. 328 at 24). Three individuals opted-in to that case. *Kalmes*, No. 13 C 363 (Dkt. 44-46). The three opt-in claims were settled as part of the settlement in this action; Kalmes and Sparks settled their individual claims separately.

The settlement agreement in this case resolved all wage claims in the *Franks* case from 2005 to 2014. The terms of the settlement agreement allow Plaintiffs' counsel, Mr. John Ireland, to petition for work performed on the following matters: (1) the individual claims of Laura Franks; (2) the individual claims of Sandra Jordan (including FLSA retaliation claims); (3) claims of those who "opted-in" to this case before the class notice was sent out, including work for Kalmes, Sparks, and Charlotte Kubinski; (4) the class members in this case; and (5) the three opt-ins from the *Kalmes* case. (Dkt. 283-1).

## II. DISCUSSION

### A. Legal Standard

As the prevailing party, counsel for Plaintiffs is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001). When a prevailing party is entitled to "a reasonable attorney's fee," the Seventh Circuit has instructed that "the district court must make that assessment, at least initially,

based on a calculation of the 'lodestar'—the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640 (7th Cir. 2011) (citation omitted). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the fee applicant satisfies this burden, the burden then shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996). Recognizing the difficulty in determining the hourly rate of an attorney who uses contingent fee arrangements, the Seventh Circuit has advised district courts to rely on the "next best evidence" of an attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). Of these two alternatives, the Seventh Circuit has expressed a preference for third party affidavits that attest to the billing rates of comparable attorneys. *Id.* at 556. If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999). Once the district court has established the lodestar, it then

may adjust it to account for factors not subsumed by the lodestar calculation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543–44 (2010).

In determining the proper lodestar figure, the delay of payment must be accounted for. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). "[A] court may compensate for delay in one of two ways: (i) it may award fees based on the attorney's rates at the time of the award (the 'current rate' method) or (ii) it may award fees based on the attorney's rates at the time the services were rendered and add prejudgment interest on that amount (the 'historical rate plus interest' method)." *Shott v. Rush-Presbyterian-St. Luke's Medical Center*, 338 F.3d 736, 745 (7th Cir. 2003). The Seventh Circuit has held that the court "may elect to use either of these two methods—current rates or past rates with interest—as acceptable compensation for the delay in payment of fees." *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994). *See also Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 744 (7th Cir. 2003) (same).

Defendant asserts that Ireland's rate should be based on the rate at the time services were performed, plus interest, (Dkt. 322 at 7), whereas Ireland seeks the current rate method. (Dkt. 328 at 5-6). The use of current billing rates has been endorsed by the Supreme Court as "an appropriate adjustment for delay in payment." *Coston v. Plitt Theatres, Inc.*, 727 F. Supp. 385, 390 (N.D. Ill. 1989) (citing *Missouri*, 491 U.S. at 284). Although courts have noted that other methods may be more precise, *see Lippo v. Mobil Oil Corp.*, 692 F. Supp. 826 (N.D. Ill. 1988) (adopting a weighted average prime rate method for each year and adjusting for

interest), in cases that have been ongoing for several years, courts have indicated that a current rate model promotes efficiency. *See Coston*, 727 F. Supp. at 391 ("In a case that has already lasted more than six years, it would not constitute sound case management to spend more judicial time fine-tuning an attorney's fee award. Although we will not rule out the use of a weighted average prime rate method or some other alternative method in an appropriate case, in this case, we will use current billing rates to compensate for the delay in payment."). Here, the fee petition covers billing entries from 2009-2014. In the interest of judicial efficiency, the Court will use the current rate to calculate fees.

## B. Calculation of Lodestar

### 1. Hourly Rate

Plaintiffs' counsel, John Ireland, is a solo practitioner and contends that he is entitled to a fee rate of $350 per hour. He states that he bills at a rate of $350 per hour when retained, (Dkt. 320 at 10), and that this rate is similar to the rate of other lawyers of similar ability in the community. In support, he has submitted a declaration setting forth his experience (Dkt. 319-1), a second declaration and attachments setting forth invoices and payments from three clients as a representation of his fees (Dkt. 319-7), affidavits from two attorneys, Mr. Bryan Sims and Mr. David Fish (Dkts. 319-8, 319-9), and a case from 2010 wherein he was awarded a rate of $275 per hour (Dkt. 319-10).

Ireland has practiced law since 2004, opening his own law firm in 2007. (Dkt. 319-1 at 1). He concentrates on FLSA claims and Illinois Wage Payment and

Collection Act cases. Ireland works almost exclusively on a contingency fee basis, but has submitted documents regarding three separate instances following the settlement in the *Franks* case where he billed paying clients $350 per hour. (Dkt. 319-7 at 1). Client One's affidavit, dated December 20, 2014, attests to a one-time consultation of $350 to assess an offer of settlement. (Dkt. 319-7 at 3-5). Client Two retained Ireland on January 19, 2015, for a total amount of $700 for two hours to assist in the reversal of a default judgment, and if successful to negotiate a settlement. (Dkt. 319-7 at 6-9). Client Three's invoice, dated March 20, 2015, indicated an hourly billing rate of $350. The invoice totaled $490.00 for 1.4 hours of services for "consultation on termination of employee" and "review, evaluation and drafting of Memo regarding proposed Handbook." (Dkt. 319-7 at 10). In an affidavit submitted with Plaintiffs' Reply, Ireland states that all three matters involved FLSA claims or wage deductions and collections. (Dkt. 328-1). Of the 4.4 hours of work performed at the billing rate of $350, Ireland assessed an offer of settlement for a client, assisted in drafting a motion to vacate a default judgment, drafted a memo for a proposed handbook, and consulted on the termination of an employee. Significantly each of these representations appear to be limited in duration and in task, and with the exception of assisting in the preparation of a motion to vacate a default judgment, the matters do not involve litigation. Even the case of the default contemplates an immediate attempt at settlement, if the default is reversed. For these reasons, the Court finds that Mr. Ireland has not submitted examples of his

hourly market rate for comparable litigation work and will not consider them in its analysis.

As stated, if an attorney cannot establish his market rate because he "maintains a contingent fee or public interest practice," the attorney may prove his billing rate "by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work, or by submitting evidence of fee awards that the applicant has received in similar cases." *See People Who Care*, 90 F.3d at 1310 ("If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence-the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" (internal citations omitted)). Ireland submitted affidavits from two attorneys, Bryan M. Sims and David J. Fish.

Sims has been a licensed attorney in Illinois since 1996, eight years longer than Ireland. He concentrates in civil litigation, business litigation (including certain employment matters), real estate litigation, and business and real estate transactions in "the Chicagoland area as well as federal court in the Northern District of Illinois." (Dkt. 319-8 at 1). Sims is familiar with Ireland's work and knows that Ireland was approved for a rate of $275 per hour in 2010. Sims believes that since 2010, Ireland has grown as a lawyer and the rate of $350 is commensurate with other litigators in the community. (Dkt. 319-8 at 1). However,

Sims does not specify his own hourly rate, nor does he specifically mention the rate of other FLSA attorneys in the community.

Fish has been licensed in Illinois since 1999, only 5 years longer than Ireland, and practices employment and business law in the Northern District of Illinois and state court. (Dkt. 319-9 at 1). His rate is $350 per hour. He is familiar with Ireland's work and believes that the rate claimed by Ireland is commensurate with other litigators in the community. In a supplemental affidavit, Fish notes that he regularly handles Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL), and Illinois Wage Payment and Collection Act (IWPCA) claims on behalf of both plaintiffs and defendants. (Dkt. 328-9 at 1). According to his supplemental affidavit, his new rate is $360-375 per hour. (Dkt. 328-9 at 4).

In establishing market rate, the Court considers the rates lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. *See Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995). However, "[c]ourts in this district have determined that 'hourly rates awarded in non-FLSA . . . cases are not particularly relevant as evidence of . . . the reasonable hourly rate . . . at the prevailing market rate for attorneys engaged in FLSA work.'" *Goodale v. George S. May Int'l Co.*, No. 09 C 7848, 2010 WL 2774013, at *1 (N.D. Ill. July 14, 2010) ("The affidavits Ireland submitted from other attorneys describe fee rates for employment discrimination, civil rights, and other general or employment litigation work, not what an attorney with Ireland's experience earns on FLSA cases."). In this case, Sims and Fish have 5-8 years more

experience than Ireland and only Fish has represented clients in FLSA cases. Moreover, Sims did not indicate his hourly rate, and Fish, with his 5 years greater experience, charges a rate of $350-$375. Factoring in that Fish has 5 years more experience than Ireland, it is not clear what someone of "similar ability and experience" would charge, but it is clear that $350 is too high. Despite Sims and Fish's testimony that Ireland's hourly rate of $350 is reasonable, Ireland has failed to establish the market rate of attorneys with similar ability in the community "by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work." *Small*, 264 F.3d at 707.

An attorney may also rely on fee awards that the applicant has received in similar cases to establish his hourly rate. *See Small*, 264 F.3d at 707. Both parties refer to the 2010 decision where the Court awarded Ireland a rate of $275 per hour.[1] *Goodale*, 2010 WL 2774013, at *1. The *Goodale* court determined that an hourly rate of $275 was reasonable for Mr. Ireland's work in that FLSA misclassification case. Ireland argues that an increase to an hourly rate of $350 is reasonable over the course of 5 years. (Dkt. 320 at 10-11).

Defendant submitted two affidavits regarding what attorneys with FLSA experience charge for paying clients. Charles Poplstein, attorney for Defendant, submits that he has over 30 years of experience and billed at a rate of $365 per hour in this matter. (Dkt. 322-1 at 2). Tabitha Davisson, with over 9 years of experience, 2 years less than Ireland, handling labor and employment issues, including FLSA

---

[1] Ireland started working on the *Franks* case in September 2009, and ultimately resolved the case in December 2014. In July 2010, *Goodale* established his rate to be $275.

and state wage and hour claims, billed at a rate of $280-$320 in this case. (Dkt. 322-2 at 1-2). However, both of these lawyers practice in and bill at St. Louis, Missouri, rates.[2]

If Plaintiffs do not satisfy this burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community, the Court "has the authority to make its own determination of a reasonable rate." *Pickett*, 664 F.3d at 640. In the end, the Court is tasked with "arriv[ing] at its own determination as to a proper fee" by both "consider[ing] submitted evidence of the hourly rates of attorneys with comparable experience [and] . . . determin[ing] the probative value of each submission." *Small*, 264 F.3d at 707 (internal quotation marks and citation omitted). Taking into consideration all of the affidavits submitted and the $275 rate established in 2010, the Court awards Ireland a fee rate of $330 per hour for his work on this matter.

## 2. Hours Worked

Once a court has established an attorney's appropriate hourly rate, it next assesses the attorney's time entries and should "exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A court may not arbitrarily cut a fee request; "a concise but clear explanation of its reasons for any reduction" is required. *Id.* (internal quotation omitted). Ireland calculates that he worked 1,230.4 hours on

---

[2] Defendant has chosen not to submit an affidavit as to rates from its Chicago based counsel.

this case. (Dkt. 319 at 3). Defendant has objected to the time claimed by Ireland in several respects. It has submitted a chart cataloguing its objections, using a coding system "0-9."[3] The Court refers to the coded objections from that chart at various points in the discussion that follows.

### a. Clerical and administrative tasks and time entries containing no description of work performed

Defendant argues that Ireland improperly included (1) clerical and administrative tasks in his fee petition, and (2) several time entries with no description of tasks performed. (Dkt. 322 at 16 n.5). Defendant asserts that 44.1 hours are allocated to clerical and administrative tasks such as "download, save to folder and print" or have no description at all. (Dkt. 322 at 16, 16 n.5). The Court reviewed the 393 entries objected to by Defendant, and calculated approximately 46 hours that were allocated to administrative work.[4] The Court reviewed an additional 8 entries totaling 1 hour that contained no description of the work being performed.[5] Ireland billed all of these entries at an hourly rate of $350.

Defendant relies on *Baltz v. County of Will*, No. 84 C 2198, 1990 WL 140991 (N.D. Ill. Sept. 27, 1990) to support its contention that an attorney may not bill at

---

[3] 0. Undesignated Time; 1. Clerical and Administrative Time and Time with No Description; 2. Travel Time; 3. Time Attributable to Motions for Collective Action; 4. Miscellaneous Time; 5. Time Attributable to Motion for Reconsideration; 6. Time Attributable to Motion to Strike Affirmative Defenses; 7. Time Attributable to Fee Petition; 8. Time Attributable to *Kalmes* Collective Action Motion; 9. Time Appearing to be for Representation of Kalmes and Sparks in their individual cases.

[4] Defendant's spreadsheet for 2014 incorrectly reflects Plaintiffs' entries. The Court conducted its own review and assessed the time entries accordingly.

[5] Entries 5/12/11 (.1 hour); 1/22/14 (.1); 2/6/14 (.1); 4/26/14 (.1); 4/28/14 (.2); 4/28/14 (.2); 6/4/14 (.1); 6/25/14 (.1).

an attorney's rate "for typing, copying, filing and the like" and argues that the entire fee petition is an "inherently unreliable document." *Id.* at *2. Relying on *Baltz,* Defendant argues that Ireland's time entries are inherently unreliable and proposes abandoning the fee petition altogether and awarding Ireland what he would have recovered on a contingency fee basis. In *Baltz,* the court did disregard the fee petition and awarded the attorney a thirty percent contingency. *Baltz,* 1990 WL 140991, at *2. After considering the public interest underlying the FLSA, however, the court doubled the fees awarded. *Id.* Defendant argues that this Court should award the ordinary one-third contingency fee. (Dkt. 322 at 18). The Court rejects this argument. After thoroughly reviewing the nearly 400 time entries flagged by Defendant as administrative (Code 1), the Court does not find Ireland's time records to be inherently unreliable.

In the alternative, Defendant urges the Court to designate these tasks as non-compensable clerical time. However, the Court finds that, similar to *Goodale,* Mr. Ireland should be compensated at the paralegal rate for these tasks. In *Goodale,* the court noted that time entries to be compensated at the paralegal rate included: "all non-substantive e-mails (setting lunch plans, e-mailing and receiving documents, coordinating times to discuss, etc.); downloading and uploading filings; communications with clients regarding fees and hours worked; facsimiles sent and received; and e-mails largely confirming information with clients." *Goodale,* 2010 WL 2774013, at *5. The Court rejects Defendant's argument that these duties are

purely clerical. Accordingly, the Court will award compensation for this time at the rate a paralegal would charge.

Ireland has no objection to these tasks being compensated at a paralegal rate. *Goodale* found $75 for a paralegal's hourly rate was appropriate. However, Ireland argues that this rate should be adjusted for the passage of five years. (Dkt. 328 at 15). Both parties point to the *Goodale* case where the Court assessed $75 for paralegal work, and Ireland suggests this figure should be increased due to the five-year lapse in time since that case. Because Defendant opposes any award for time in this category, it did not provide opposing evidence of a paralegal market rate. As neither party has submitted any other figure for the appropriate paralegal market rate,[6] the Court will assign $90 as the hourly rate for the 46 hours of paralegal work in this case. The Court will reduce the fee award by 1 hour to account for the entries that contain no description for work performed.

### b. Travel Time

Defendant objects to the time spent traveling to and from court. (Dkt. 322 at 18).[7] By the Court's calculation, Ireland's entries for travel time total 160.7 hours, and the hours spent traveling to and from court is 113.8 hours. The remaining 46.9

---

[6] A review of Defendant's billing records reveal that the "Legal Assistant (paralegals and other legal support personnel)" billed at an hourly rate of $205-$235 (Dkt. 319-12 at 4, 12, 113). Many of these tasks appear comparable to work performed by Ireland. *See, e.g.*, "Organize documents produced; review and index documents produced." (Dkt. 319-12 at 7).

[7] In their Response, Defendant asserts Ireland spent 137.2 hours traveling to and from the courthouse. However, Defendant's spreadsheet includes some travel time entries in this category for client meetings and depositions. The Court relies on its own calculation and finds Ireland recorded 113.8 hours for travel time to and from court.

hours was time spent traveling to depositions or client meetings. Additionally, there were 7.2 hours of recorded travel time for a Ride Share with clients for a July 17, 2013 settlement conference at the court. (Dkt. 319-4 at 30).

In *Henry v. Webermeier*, the Seventh Circuit stated that there is a presumption in a fee award under 42 U.S.C. § 1988 "that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time." *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). However, in *Riddle v. Nat'l Sec. Agency, Inc.*, No. 05 C 5880, 2010 WL 1655443, at *6 (N.D. Ill. Apr. 23, 2010), the court noted that "*Henry* does not support the proposition that an award of attorneys' fees includes time spent commuting." In *Riddle*, an FLSA case, the court did not award travel time for commuting to court from the suburbs as part of travel time. Consistent with *Riddle*, this Court will not award fees for the time Ireland spent commuting from the suburbs to court. Defendant does not object to Plaintiff's remaining travel time. The Court awards all remaining travel time, 46.9 hours, for travel to and from depositions and client conferences, and also the 7.2 hours on July 17, 2013 when Ireland traveled with his clients to the courthouse for a settlement conference. The Court believes this time is compensable since it was time spent meeting with clients about the case and the settlement conference.[8] Plaintiffs' fee request will be reduced by the 113.8 hours Ireland spent commuting to court.

---

[8] Defendant contests this entry as duplicative. The Court finds the entry is not duplicative, but reflects a one-time entry for both transportation and meeting with clients.

### c. Motion for Reconsideration and Motions to Strike Affirmative Defenses and Defenses

Defendant argues that Ireland should not recover for time spent on wage claims unrelated to the conversion claim (the RUBY claim) and the individual claims of Laura Franks and Sandra Jordan, or for the time spent on unnecessary and unsuccessful work. (Dkt. 322 at 20). Defendant notes that the RUBY claim was the only claim where Plaintiffs ultimately prevailed on class certification, and that claim was not filed until April 22, 2011, sixteen months after the case had been filed. Defendant further argues that the time spent on Plaintiffs' motions to strike affirmative defenses and to strike defenses (*see* Dkt. 157, 159), and Plaintiffs' motion for reconsideration of the Court's September 7, 2012 Order (*see* Dkt. 222), should be stricken from the fee petition because these motions were unsuccessful and unnecessary. (Dkt. 322 at 20).

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact specific enterprise," and the court has "wide latitude" in awarding attorney's fees. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (internal quotation marks omitted). The court considers whether hours are "excessive, redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours attorneys would not bill to their clients, and hours for which the prevailing party has failed to provide adequate support. *Rodriguez ex rel. Fogel v. City of Chicago*, No. 08 C 4710, 2013 WL 5348307, at *5 (N.D. Ill. Sept. 24, 2013) (citing *Hensley*, 461 U.S. at 433–34). Because of its familiarity with the litigation, the court is in the best position to

determine the number of hours reasonably expended in the litigation. *See McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993).

Motion to Strike Affirmative Defenses and Motion to Strike Defenses: Ireland spent 14.3 hours on a motion to strike affirmative defenses and 5.7 hours on a motion to strike defenses, for a total of 20 hours. (*See* Dkt. 319-3). On March 31, 2012, the Court denied Plaintiffs' motion to strike defenses, and on September 7, 2012, the Court denied without prejudice Plaintiffs' motion to strike affirmative defenses. (Dkt. 221). Defendant asks the Court to find that Plaintiffs made unnecessary arguments and relies on the district judge's comments in its ruling on the motion to strike defenses: "Third, the lack-of-knowledge defense may stand: the defense does not assert, as Plaintiff thinks, that ignorance-of-the-law is a defense. Rather, Defendant pleads that it cannot be responsible for paying wages not reported to it [. . .]." (Dkt. 206). Defendant also asserts the hours spent on the motions to strike were unnecessary to Plaintiffs' ultimate success regarding the RUBY claim (Dkt. 322 at 21), and cites *Rodriguez ex rel Fogel*, 2013 WL 5348307, at *5 (finding Plaintiff "is not entitled to fees in connection with filing this motion to strike as it was ultimately unnecessary to the court's resolution of the summary judgment briefing"). The Court believes Ireland's motion to strike affirmative defenses was not filed unreasonably. However, the Court will reduce Plaintiffs' requested fees by 5.7 hours, the amount of time spent on the motion to strike defenses, since the pleading itself indicates that the parties had agreed on a resolution to the Plaintiffs' primary concern that the defenses were not properly

labeled as "defenses." (Dkt. 159 at 2) ("Defen[se] counsel suggested an 'agreement' to label the claims, and that the agreement be filed as an attachment when the claims are at issue. While Plaintiffs agreed to this, Plaintiff believes this is actually improper, Plaintiff should not have to fight Defendant to properly label Defendant's own pleadings. . ."). Based upon this language, the Court believes this second motion to strike was not reasonably filed, and will reduce the fee award by 5.7 hours.

Motion for Reconsideration: Ireland expended 22.1 hours on a motion for reconsideration of the denial of the motion for collective action and class certification. Defendant argues that these motions are rarely granted. The fact that a Court does not often grant a motion is not a basis to find it was unreasonably filed. On January 15, 2014, Judge Chang asked the parties whether either side would like a ruling on the motion for reconsideration in light of the ongoing settlement negotiations. (*See* Jan. 15, 2014 Order, Dkt. 264). Plaintiffs wanted a ruling while Defendant did not. The Court decided not to rule on the motion. (*See* Dkt. 268 terminating motion for reconsideration without prejudice in light of the settlement conference). Based on this record, the Court cannot determine that this motion was unreasonable or unnecessary. The Court awards the 22.1 hours spent briefing this motion.

### d. Time Attributable to Motions for Collective Action or Class Certification

Plaintiffs attribute 154.5 hours of time to motions for collective action or class certification. Defendant argues that this time should be adjusted to account only for

time expended on the RUBY class action, since that was the only claim that was ultimately certified. Defendant asserts that Ireland is not entitled to time spent on claims in which he did not prevail: (1) class certification for off-the-clock work; (2) class certification for compelled payments; (3) FLSA conditional certification of violations of the minimum wage law; and (4) FLSA conditional certification of violations of the overtime law. Accordingly, Defendant asks the Court to cut Ireland's fees by 4/5 and compensate him for 31 hours as attributable only to the RUBY claim. The Court finds this proportional analysis unpersuasive.

While it is true that two of the three classes were not certified as class actions, the claims were not altogether distinct. The claims all involved different methods by which MKM allegedly did not properly pay wages to its employees. The Court will not impose an "across the board" reduction using a 4/5 formula. Courts from the Supreme Court on down have disapproved of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 435 n.11. Moreover, as explained above, a mathematical approach is particularly unsuitable where, as here, the Plaintiffs' claims are largely interrelated, both legally and factually. *See Delgado v. Mak*, No. 06C3757, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009). Although only the RUBY claim was certified as a class action, the other claims were interrelated. In fact, the discovery for those claims ultimately led to the discovery of the evidence of the conversion claim.

However, some reduction is warranted here.[9] The Court will reduce this time by 1/3 (51.5 hours) to account for the fact that four out of the five claims were not certified or allowed to proceed as a collective action.

### e. Undesignated Time and Miscellaneous Time

Defendant labeled 2,421 entries, totaling 763 hours, as either "undesignated time" (Code 0), or "miscellaneous" (Code 4).[10] With respect to undesignated time, Defendant notes: "Those entries . . . are subject to the more general objections raised in this opposition but not a specific objection outlined in this memorandum." (Dkt. 322 at 16 n.4). The Court is not clear as to the basis of Defendant's objection.

"Counsel who seek fees have the duty to justify the fees with reasonable, organized, and understandable data so that the trial judge may fairly and expeditiously resolve the fee issue. Counsel who oppose the fees have a similar responsibility to state objections with particularity and clarity. Miscellaneous fee data cannot just be dumped on the bench for the judge to sort through and resolve." *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985); *see also Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 WL 633414, at *7 (N.D. Ill. Feb. 11, 2011) ("Indeed, the cases are uniform in stressing that the parties must comply

---

[9] Defendant relies on the district court's language ruling on the motions for class certification and collective action where it notes deficiencies in Plaintiffs' briefing: "Although these errors do not rise to the level of finding inadequacy of counsel, the Court could take them into account if the class prevails and counsel moves for attorney fees." (Dkt. 220). The Court has taken this observation into consideration in calculating the hourly rate and decreasing the hours awarded here.

[10] Code 0 refers to "Undesignated Time (i.e. nothing specified, independent of issues as to rate and proportionality and efficiency)" and consists of 2,285 entries, totaling 722.3 hours. Code 4 refers to "Miscellaneous Time" and consists of 136 entries, totaling 40.7 hours.

with the Rule, and that the party challenging a fee petition has a 'responsibility to state objections with particularity and clarity.'") (citation omitted); *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (affirming award of attorneys' fees where party failed to raise objections to specific fees).

The Court has no way of assessing Defendant's objections to the entries labeled "undesignated time" and "miscellaneous." It appears these entries relate directly to client correspondence and communications, drafting of pleadings, research and review of documents, work on the protective order in *Kalmes*, calls to potential FLSA collective members, and other correspondence. There are no specific objections to these categories, and the time entries include work that appears reasonable and relevant to the claims.

In their Reply, Plaintiffs acknowledge that approximately 70 entries in these two categories are "possible clerical work for court decision" (*see, e.g.*, 12/19/09: "draft a case information sheet; a caption for later use in drafting . . ."; 11/29/10: "scan of documents. . ."). These entries total approximately 7 hours. The Court will reduce these 7 hours to the paralegal hourly rate of $90.

### f. Time Attributable to Fee Petition

Defendant designates 3.8 hours "time attributable to fee petition" (Code 7). Defendant does not object to this time in its Response, and the Court will not reduce these hours allocated to the fee petition.

### g. Time Attributable to *Kalmes* Collective Action Motion

Ireland reports he spent a total of 120.5 hours on the *Kalmes* opt-in work. (Dkt. 319 at 5). The parties negotiated that attorneys' fees performed for the *Kalmes* collective action would be part of the fee petition in *Franks*:

> Counsel will assert any claim for attorney's fees (but not costs) incurred in representing any of the Kalmes Opt-Ins personally in connection with their opt-in claims in the Kalmes Lawsuit in his fee petition in the Litigation, and the Court in the Litigation will determine whether and to what extent such fees may be awarded. MKM will not object to the assertion of such a claim for attorney's fees in the Litigation, as opposed to the Kalmes Lawsuit, but reserves and retains the right to contest the amount or validity of any such fee claim.

(Dkt. 283-1 at 6).

Defendant objects to 15 time entries, totaling 1.9 hours, for work performed in the *Franks* case and 52 time entries, totaling 29.7 hours, for work performed in the *Kalmes* case (Code 8). Defendant objects because only three individuals opted-in to the *Kalmes* case, and those claims were settled for relatively minor amounts. Essentially, Defendant's argument is that because only three individuals opted-in to the collective action, there were not enough members in the action to justify the attorneys' fees on this work. This is unpersuasive. Ireland is awarded fees for his time on the collective action in *Kalmes*.

Defendant also flags 15 entries, totaling 2.8 hours, for time Ireland spent representing Kalmes and Sparks in their individual cases (Code 9). Defendant says nothing further about this in its brief. There is no indication from the time entries that these entries were attributed to the individual claims. Plaintiffs assert that

these entries were for work performed in furtherance of the collective action.[11] The entries are mostly e-mail correspondence with Kalmes and Sparks. Plaintiffs are awarded fees for this time.

### C. Adjusting the Lodestar

Both parties argue that the lodestar should be adjusted. Plaintiffs argue the lodestar should be adjusted upward to compensate for delay in payment. Defendant argues that the award of attorneys' fees is grossly disproportionate to the award to the class, and Plaintiffs' lack of success merits a reduction downward. (Dkt. 322 at 23-28). The Court finds that no additional adjustments are necessary.

### D. Bill of Costs

Under 29 U.S.C. § 216(b), Ireland is also entitled to "the costs of the action." Plaintiffs ask for $3,070.15 in costs. (Dkt. 319 at 7). Defendant does not dispute this amount. Plaintiffs are awarded the full costs of $3,070.15.

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' fee petition in part [319]. The Court assesses Ireland's rate to be $330 per hour, and the paralegal rate to be $90 per hour. Ireland requested 1,230.4 hours. The Court reduces his hours by 225 hours (1 hour for time with no description; 46 hours for administrative work; 51.5 hours for motions on collective and class actions; 113.8 hours for commuting travel

---

[11] According to Ireland, the time devoted to Renee Kalmes, Daniel Sparks, and Charlotte Kubinski has been removed from the invoices, other than as allowed per the settlement agreement and covered by "class work." (Dkt. 319 at 4).

time; 5.7 hours for motion to strike defenses; 7 hours labeled undesignated time/miscellaneous). The Court adds 53 hours at the paralegal rate (46 hours for administrative work and 7 hours labeled undesignated time/miscellaneous). The attorneys' fees are: $406,032 (1,230.4 hours x $330) − $74,250 (225 hours x $330) + $4,770 (53 hours x $90) = **$336,552**. Plus costs, in the amount of **$3,070.15.**

E N T E R:

Dated: March 7, 2016

_Mary M Rowland_

MARY M. ROWLAND
United States Magistrate Judge